UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHRISTIAN,

       Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

       Defendant.

_____/

## Complaint

### I.    Introduction

1.    This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*, and Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

### II.    Jurisdiction

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 47 U.S.C. § 227 *et seq.* (TCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

### III.    Parties

3.    Plaintiff Michel Christian is an adult, natural person residing in Kent County, Michigan. Mr. Christian is a "consumer" and "person" as the terms are defined and/or used in

the FDCPA. Mr. Christian is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC. Mr. Christian is a "person" as the term is defined and used in the TCPA.

4.     Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002443) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC. ERC is a "person" as the term is defined and used in the TCPA.

**IV.     Facts**

5.     Mr. Christian had a credit account (N0. 534121853042) with AT&T which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6.     Mr. Christian had a dispute with AT&T regarding his account. Mr. Christian discontinued his service with AT&T.

2

7.    AT&T claimed that Mr. Christian owed a termination fee in connection with the account.

8.    Mr. Christian refused to pay the amount demanded by AT&T.

9.    Mr. Christian disputes owing AT&T the amount claimed by AT&T.

10.   Mr. Christian continues to refuse to pay the amount demanded by AT&T.

11.   AT&T hired ERC to collect the alleged debt from Mr. Christian.

12.   On or about January 3, 2013 at approximately 8:20 a.m., ERC placed a telephone call to Mr. Christian's cellular telephone in connection with efforts to collect the alleged debt from Mr. Christian, and an ERC employee left a message for Mr. Christian on Mr. Christian's voice mail. ERC and its employee did not disclose in the message that the caller was a debt collector. ERC and its employee did not disclose in the message that the caller was attempting to collect a debt and that any information obtained would be used for that purpose. ERC and its employee did not disclose in the message the caller's identity. According to Mr. Christian's telephone caller identification feature, the call was placed to Mr. Christian from telephone number 800-565-1524.

13.   On or about January 18, 2013 at approximately 11:35 a.m., ERC placed a telephone call to Mr. Christian's cellular telephone in connection with efforts to collect the alleged debt from Mr. Christian, and an ERC employee left a message for Mr. Christian on Mr. Christian's voice mail. ERC and its employee did not disclose in the message that the caller was a debt collector. ERC and its employee did not disclose in the message that the caller was attempting to collect a debt and that any information obtained would be used for that purpose. ERC and its employee did not disclose in the message the caller's identity. According to Mr.

3

Christian's telephone caller identification feature, the call was placed to Mr. Christian from telephone number 800-565-1524.

14.     On or about January 28, 2013 at approximately 2:40 p.m., ERC placed a telephone call to Mr. Christian's cellular telephone in connection with efforts to collect the alleged debt from Mr. Christian, and an ERC employee left a message for Mr. Christian on Mr. Christian's voice mail. ERC and its employee did not disclose in the message that the caller was a debt collector. ERC and its employee did not disclose in the message that the caller was attempting to collect a debt and that any information obtained would be used for that purpose. ERC and its employee did not disclose in the message the caller's identity. According to Mr. Christian's telephone caller identification feature, the call was placed to Mr. Christian from telephone number 800-565-1524.

15.     On or about January 31, 2013 at approximately 12:00 p.m., ERC placed a telephone call to Mr. Christian's cellular telephone in connection with efforts to collect the alleged debt from Mr. Christian, and an ERC employee left a message on Mr. Christian's voice mail. ERC and its employee did not disclose in the message that the caller was a debt collector. ERC and its employee did not disclose in the message that the caller was attempting to collect a debt and that any information obtained would be used for that purpose. ERC and its employee did not disclose in the message the caller's identity. According to Mr. Christian's telephone caller identification feature, the call was placed to Mr. Christian from telephone number 800-565-1524.

16.     ERC placed the above-described telephone calls to Mr. Christian's cellular telephone and left messages on Mr. Christian's voice mail, in connection with efforts by ERC to

4

collect the alleged debt from Mr. Christian.

17.     ERC placed the above-described telephone calls to Mr. Christian's cellular telephone and left messages on Mr. Christian's voice mail, in an effort to induce Mr. Christian to place a return telephone call to ERC so that ERC could continue in its efforts to collect the alleged debt from Mr. Christian.

18.     ERC placed the above-described telephone calls to Mr. Christian cellular telephone and left messages on Mr. Christian's voice mail, for the animating purpose of inducing Mr. Christian to pay the alleged debt.

19.     Each message left by ERC on Mr. Christian's voice mail constituted a "communication" as the term is defined and used in the FDCPA and MOC.

20.     ERC did not disclose in any of the messages its employees left on Mr. Christian's voice mail that ERC was attempting to collect a debt from Mr. Christian and that any information obtained would be used for that purpose.

21.     ERC did not disclose in any of the messages its employees left on Mr. Christian's voice mail that ERC was a debt collector.

22.     ERC violated the FDCPA by failing to disclose in the messages its employees left on Mr. Christian's voice mail that ERC was attempting to collect a debt and that any information obtained would be used for that purpose. 15 U.S.C. § 1692e(11). *See, e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.,* 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

23.     ERC violated the FDCPA by failing to disclose in the messages its employees left

on Mr. Christian's voice mail that ERC was a debt collector. 15 U.S.C. § 1692e(11). *See, e.g., Joseph v. J.J. Mac Intyre Companies, L.L.C.,* 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

24.     When ERC and its employees left messages on Mr. Christian's voice mail, ERC and its management were aware of multiple, published federal district court opinions in which the courts have held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector and without disclosing that the caller is attempting to collect a debt and that any information obtained will be used for that purpose. *See Joseph v. J.J. Mac Intyre Companies, L.L.C.,* 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.,* 424 F.Supp.2d 643 (S.D.N.Y. 2006).

25.     When the ERC employees left messages on Mr. Christian's voice mail, it was against ERC company policy for an ERC employee, in connection with efforts to collect a debt from Mr. Christian, to leave a message on Mr. Christian's voice mail and not state that the caller was attempting to collect a debt and that any information obtained would be used for that purpose.

26.     When the ERC employees left messages on Mr. Christian's voice mail, it was against ERC company policy for an ERC employee, in connection with efforts to collect a debt from Mr. Christian, to leave a message on Mr. Christian's voice mail and not state that the caller was a debt collector.

27.     When the ERC employees left messages on Mr. Christian's voice mail, it was not

6

against ERC company policy for an ERC employee, in connection with efforts to collect a debt from Mr. Christian, to leave a message on Mr. Christian's voice mail and not state that the caller was attempting to collect a debt and that any information obtained would be used for that purpose.

28.     When the ERC employees left messages on Mr. Christian's voice mail, it was not against ERC company policy for an ERC employee, in connection with efforts to collect a debt from Mr. Christian, to leave a message on Mr. Christian's voice mail and not state that the caller was a debt collector.

29.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

30.     ERC and its employees left messages on Mr. Christian's voice mail, without providing meaningful disclosure of the caller's identity, violating the FDCPA.

31.     ERC and its employees left messages on Mr. Christian's voice mail, without revealing the purpose of the call, violating the MOC, M.C.L. § 339.915(e).

32.     ERC and its employees left messages on Mr. Christian's voice mail, but concealed the purpose of the call, violating the MOC, M.C.L. § 339.915(e).

33.      Mr. Christian's cellular telephone number was "assigned to a . . . cellular telephone service" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

34.     ERC used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to make the above-described calls to Mr. Christian's cellular telephone.

35.     ERC used an "automatic telephone dialing system" as defined at 47 C.F.R. 64.1200(f)(1) to make the above-described calls to Mr. Christian's cellular telephone.

7

36. None of the above-described calls made by ERC to Mr. Christian's cellular telephone was made for "emergency purposes" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

37. ERC did not obtain Mr. Christian's "prior express consent" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A) to make the above-described calls to Mr. Christian's cellular telephone.

38. ERC did not have an "established business relationship" with Mr. Christian as the phrase is used in the TCPA, 47 U.S.C. § 227(a)(4) when ERC made the above-described calls to Mr. Christian's cellular telephone.

39. ERC is not a "tax exempt nonprofit organization" as the phrase is used in the TCPA, 47 U.S.C. § 227(a)(4).

40. Mr. Christian did not provide his cellular telephone number to ERC.

41. ERC used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to make the above-described calls to Mr. Christian's cellular telephone, without Mr. Christian's prior express consent and for a non-emergency purpose, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

42. The acts and omissions of ERC and its employees done in connection with efforts to collect the alleged debt from Mr. Christian were done intentionally and wilfully.

43. ERC and its employees intentionally and wilfully violated the FDCPA, MOC and TCPA.

44. As an actual and proximate result of the acts and omissions of ERC and its employees, plaintiff has suffered actual damages and injury, including but not limited to,

8

monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

45.    Plaintiff incorporates the foregoing paragraphs by reference.

46.    Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

b)    Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1):

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A):

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3): and

d)    Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

47.    Plaintiff incorporates the foregoing paragraphs by reference.

48.    Defendant has violated the MOC. Defendant's violations of the MOC include,

9

but are not necessarily limited to, the following:

    a)    Defendant violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive manner;

    b)    Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

    c)    Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity; and

    d)    Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)    Actual damages pursuant to M.C.L. § 339.916(2);

    b)    Treble the actual damages pursuant to M.C.L. § 339.916(2);

    c)    Statutory damages pursuant to M.C.L. § 339.916(2); and

    d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 3 – Telephone Consumer Protection Act

49.    Plaintiff incorporates the foregoing paragraphs by reference.

50.    Defendant has violated the TCPA.  Defendant's violations of the TCPA include, but are not necessarily limited to, the following:

    a)    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)    Actual damages or $500.00 for each violation, whichever is greater, pursuant to 47 U.S.C. § 227(b)(3)(B); and

b)    Treble actual damages or $1,500.00 for each violation, whichever is greater,

pursuant to 47 U.S.C. § 227(b)(3)(C).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: February 7, 2013

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com